IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| ANTHONY BROWN, | ) | CASE NO.1:20-CV-01764 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION AND |
| SECURITY ADMINISTRATION. | ) | ORDER |
| | ) | |
| Defendant, | ) | |

## Introduction

Before me[1] is an action by Anthony Brown under 42 U.S.C. §405(g) for judicial review of the 2020 decision of the Commissioner of Social Security that denied Brown's 2017 application for supplemental security income.[2] The Commissioner answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to my initial[5] and procedural[6] orders, the parties briefed their positions[7] and filed supplemental fact sheets

---

[1] The parties consented to my exercise of jurisdiction and the matter was then transferred to me by United States District Judge Sara Lioi. ECF No. 21.
[2] ECF No. 1.
[3] ECF No. 12.
[4] ECF No. 13.
[5] ECF No. 6.
[6] ECF No.14.
[7] ECF Nos. 17 (Brown), 18 (Commissioner).

and charts.[8] The parties met and conferred with the objective of reducing and/or clarifying the issues.[9] The parties participated in a telephonic oral argument.[10]

For the following reasons, the decision of the Commissioner will be affirmed.

## Facts

Brown, who was 49 years old at the time the application was filed,[11] has a GED[12] and no relevant prior relevant work experience.[13]  At the relevant hearing in 2020, Brown testified that he had not used alcohol since 2018, and further that he has not used drugs or cigarettes since that time.[14] Brown testified that he lives alone and uses public transportation to see family and friends.[15]

While hospitalized for several day in 2017 at the Cleveland Clinic, Brown was diagnosed with medically intractable focal epilepsy secondary to head trauma and a large subarachnoid cyst presenting with breakthrough seizures.[16] Brown was hospitalized or seen

---

[8] ECF Nos. 16 (Brown), 17, Attachment (Brown), 18, Attachment (Commissioner).

[9] ECF No. 19.

[10] ECF No. 23.

[11] Tr. at 2329. The present application was filed while Brown was awaiting a decision on his request for judicial review of a prior application that was denied. ECF No. 18 at 2 (citing record). Following a 2019 stipulation to remand that matter under Sentence Four (tr. at 2422-25), a new hearing was conducted and the present decision was entered (*id*. at 2311-31).

[12] *Id*. at 2419.

[13] *Id*. at 2329.

[14] *Id*. at 2050-51.

[15] *Id*. at 2347.

[16] *Id*. at 239. As to the head trauma noted in the epilepsy diagnosis, the record also contains a January 2018 mental health treatment note that Brown was beaten in by other

at an ER for seizures at least sixteen times between 2017 and 2019, frequently for multiple days.[17]He consistently opted for medication changes rather than surgery[18]until 2019, when he agreed to temporal lobe resection,[19]but he then failed to show up for the scheduled procedure.[20]

The ALJ found that Brown has the following severe impairments: seizure disorder with history of treatment noncompliance; history of recurrent substance abuse; adjustment disorder; antisocial personality disorder; and degenerative changes in the spine with spondylosis.[21]The ALJ further found that Brown does not have an impairment or combination of impairments that meet or medically equal a listing.[22]In forming that decision, the ALJ considered Listings 1.04 (disorders of the spine) and 11.02 (epilepsy).[23]

To that end, the ALJ initially observed that Brown's seizure disorder did not meet Listing 11.02 because the evidence did not show findings of specific types of seizures occurring at least once a month for at least three consecutive months, despite adherence to

---

inmates while incarcerated at the Lucasville prison for refusing to kill a guard during the 1993 riots and that his seizure disorder developed after this beating. *Id*. at 2648. But, a 2017 treatment note from Richard Naugle, Ph.D. of the Cleveland Clinic states that whether the disruption of Brown's left frontotemporal functioning arose from the 1993 prison beating or "predates that event and contributed to [Brown's] decision to drop out of school after the 9th grade in unclear." *Id.* at 400.

[17] *Id*. at 239, 239-40, 254, 479, 278, 281-82, 512, 2187, 2232-38, 2261, 2278, 2794, 2719, 2743, 3119, 3413.

[18] *Id*. at 2322.

[19] *Id.* at 2324.

[20] *Id*. He later told Dr. George Tesar, a treating psychiatrist, that he was concerned that the surgery would make his symptoms worse. *Id*.

[21] *Id*. at 2315.

[22] *Id*. at 2315-17.

[23] *Id*.

prescribed treatments.[24]The ALJ then considered Listing 1.04 and found there was no evidence of a compromise of the nerve root or the spinal cord, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively.[25]As to mental impairments, the ALJ found that  Brown had only moderate limitations in all four paragraph B criteria of Listings 12.04 (major depressive disorders) and 12.08 (personality disorders).[26]

Brown was determined to have an RFC for medium work, with additional physical and mental limitations.[27]In formulating that RFC, the ALJ relied on Brown receiving essentially conservative treatment for his impairments,[28]stability in his symptoms,[29]and Brown's failure to follow treatment recommendations,[30]which, the ALJ further noted, may justify a finding that the alleged intensity and persistence of symptoms are inconsistent with the record.[31]  Moreover, the ALJ found that the functional opinions of state agency reviewers as to Brown's physical and mental limitations were only "some persuasive" (physical) or of "limited persuasiveness" (mental).[32]2019 0pinions from state agency consultants were found generally persuasive, while the 2017 assessment of Dr. Naugle, an

---

[24] *Id*. at 2315.
[25] *Id.*
[26] *Id*. at 2316-17.
[27] *Id*. at 2317.
[28] Id. at 2320.
[29] *Id*. at 2321, 2323, 2325.
[30] *Id*. at 2326.
[31] *Id*.
[32] *Id.* at 2327.

examining neurologist, had some persuasiveness.[33] The two 2019 mental status assessments from Dr. George Tesar, a treating psychiatrist, were found of limited persuasiveness.[34] Treatment notes and assessments from 2017-19 by Dr. Dileep Nair were considered and the October 2018 and May 2019 assessments were judged to be of limited persuasiveness.[35]

Because Brown has no past relevant work,[36] the ALJ, with the testimony from a VE, then considered if there were jobs available that Brown could perform under this RFC. The ALJ identified the positions of housekeeping, cleaner; folder, laundry; and inspector, hand packager as such jobs and further testified that in all these occupations jobs exist in significant numbers in the national economy.[37] Thus, Brown was found not disabled.[38]

## Analysis

This matter is analyzed under the long-standing substantial evidence standard, which need not be re-stated. Further, the ALJ's treatment of the opinion evidence is adjudicated under the relatively new standard of the persuasiveness of such evidence, which also does not need to be restated.

---

[33] Id. at 2328.
[34] *Id*. at 2328.
[35] *Id*. at 2329.
[36] *Id*.
[37] *Id*. at 2330-31.
[38] *Id*. at 2331.

Brown raises two issues: (1) did the ALJ conduct a full review of the evidence to determine if Listing 11.02 was met[39] and (2) did the ALJ properly evaluate the opinion evidence of Dr. Tesar, the treating psychiatrist.[40]

To the first point, the evidence going to Listing 11.02, Brown argues that the clinical evidence is uncontested that he has medically intractable focal epilepsy, and that the recommended surgery would not improve that condition, only prevent it from worsening.[41]Further, he argues that the ALJ's frequent mentioning of Brown's purported non-compliance with treatment is, of itself, an incomplete reason for finding that Brown does not meet Listing 11.02. Rather, according to Brown, SSR 18-3p stated that in order to use non-compliance in denying a claim, the ALJ must first find that the claimant is otherwise entitled to benefits, then show that the claimant's treating physician prescribed a treatment for the claimant's disabling condition and then show that the claimant did not avail himself of that treatment.[42]

For his part, the Commissioner contends that it is Brown who fails to show what evidence supports his meeting Listing 11.02.[43]Specifically, the Commissioner asserts that while Brown cites to incidents of seizures in 2017 and 2018, he "fails to explain how any seizure activity was documented in the manner and with the frequency prescribed by

---

[39] ECF No. 17 at 16-19.
[40] *Id*. at 26-28.
[41] *Id*. at 18.
[42] *Id*. at 18-19.
[43] ECF No. 18 at 8-9.

Listing 11.02."[44] In addition, the Commissioner points out that Brown can adduce no evidence that any seizure was described by a witnessing medical professional, as is also required by Listing 11.02.[45]

Moreover, the Commissioner notes that seizures occurring during a period where the claimant was non-compliant with medication cannot be counted for purpose of the listing.[46] To this point, the Commissioner points to 2017 where Brown consumed alcohol while knowing that this behavior contributed to seizures.[47] Finally, the Commissioner cites to the "mostly persuasive" 2019 opinions of state agency reviewers who, after reviewing the evidence, concluded that Brown did not meet Listing 11.02.[48]

From these arguments and the relevant record, I find no error in how Listing 11.02 was evaluated. First, as I mention above, the ALJ's cited reason for finding that Listing 11.02 was not met here was that there was no evidence of specific kinds of seizures occurring with the required frequency during a time when Brown was compliant with his medication.[49] So stated, this is fully consistent with the terms of the Listing, as noted by the Commissioner.[50] That fact is significantly different from Brown's argument on how non-compliance is used in a situation where it is a  factor in overriding an otherwise successful disability claim. The key difference here is that the language of the listing itself

---

[44] *Id*. at 8.
[45] *Id*. at 9.
[46] *Id*. at 10.
[47] *Id*.
[48] *Id*. at 12.
[49] *Id*. at 2315.
[50] ECF No. 18 at 10, citing 20 CFR Pt. 404, Subpt. P, 11.00H(4)(d).

incorporates non-compliance as a factor into the finding of whether the listing has been met.

Thus, the ALJ properly found that under the terms of the listing itself, Brown could not show the necessary frequency of seizures during times when he was compliant with his medication. That stated reason, plus the fact that the 2019 opinions of the state agency reviewers on this topic, are substantial evidence for the ALJ's decision that Brown does not meet or medically equal Listing 11.02.

Next, as to the ALJ's handling of the opinion of Dr. Tesar, Brown essentially claims that the error here was that the ALJ failed to articulate how persuasive he found Dr. Tesar's opinion to be; specifically, in that he failed to explain his persuasiveness finding in terms of the supportability and consistency factors set out in the regulation.[51]

The ALJ here first specifically contrasted specific findings of Brown's cooperative, interactive, pleasant and agreeable person presentation,[52] as well as of Brown's recall ability, intact attention span, and organized, intact and linear thought processes,[53] with Dr. Tesar's "level of limitations."[54] Further, the ALJ found that not only was Dr. Tesar's opinion inconsistent with these other facts in the record, it was not supported by Dr. Tesar's

---

[51] ECF No. 17 at 21.
[52] Tr. at 2328, citing 6 separate exhibits in the record.
[53] *Id*., citing 10 separate exhibits in the record.
[54] *Id*.

"own findings that [Brown] behaved more confused than he really was and that he had the mental capacity to make his own informed decisions about healthcare."[55]

I find no error in how the ALJ weighed the opinions of Dr. Tesar under the rubric of persuasiveness. In particular, I find that the ALJ considered both whether the opinions were supported by Dr. Tesar's own notes and whether they were consistent with the evidence from other parts of the record. In sum, the ALJ's treatment was both consistent with the requirements of the regulation and also capable of meaningful judicial review.

## Conclusion

For the reasons stated, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated: March 28, 2022

Signed by:
 s/William H. Baughman Jr.
United States Magistrate Judge

---

[55] *Id*., citing Dr. Tesar's opinions.